**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mark L. PATRICK,**
**Defendant–Appellant.**

**No. 90–3602.**

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1991.

Decided June 5, 1991.

Samuel A. Yannucci, Asst. U.S. Atty. (argued), Cleveland, Ohio, for plaintiff-appellee.

Debra M. Hughes (argued), Office of the Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Mark L. Patrick appeals his jury conviction for kidnapping in violation of 18 U.S.C. § 1201(a). Patrick raises two issues in his appeal: (1) did the district court's failure to advise him of the nature of the charge and the potential penalties upon conviction render his waiver of the right to counsel invalid; and (2) did the district court err in departing upward under Federal Sentencing Guidelines § 5K2.0. For the following reasons, we affirm the judgment of the district court.

In March of 1986, Mark Patrick moved into the house that Larry and Pamela Wise shared with their two daughters. The Wises asked Patrick to sit with the two girls and keep the house while they worked; for this they sought no rent. The Wises and Patrick had become friends in the early 1980's through a common interest in the game of Dungeons and Dragons. Soon after moving in with the Wises, Patrick developed a strange obsessive relationship with their daughter, Crystal. He spoke of raising her and someday marrying her. At the time, Crystal was less than one year old.

Needless to say, Larry and Pamela became distraught over Patrick's obsession with Crystal. They tried unsuccessfully to move him out of their house, and in 1989, they decided the solution was to move out themselves and leave Patrick. In late May or early June, the Wises told Patrick of their resolution. Just before the Wises moved, in the early hours of June 15, Patrick went to Crystal's bedroom and took her from her bed and headed for West Virginia. At the time, Crystal was only three years old. Patrick moved among various members of his family in West Virginia before being arrested at the home of a cousin, Cynthia Tanzey. Patrick told the arresting officers that Crystal was not the daughter of Larry and Pamela Wise but that she was his daughter, Krystal Anne Patrick. He also told them that he was a druid priest.

Patrick's brief here begins with the attestation that he was living as a druid priest in the Virgin Islands "awaiting orders from [his] superiors," before moving in with the Patricks. Patrick testified at trial that he was "ordered" to go to Ohio to guard, protect, and educate the new born child of Larry Wise. In his defense at trial he testified that in May of 1989 he received further "orders" to take Crystal "posthaste to England no later than the thunder moon so as she may be installed in office, then transported to Europe for education."

At the trial a letter was introduced that Patrick wrote to a friend on June 15, 1989, at 12:30 A.M., immediately before he took Crystal to West Virginia. The letter stated in part:

By the time you are reading this, I will be with the Inner Circle and the High

Druids. Believe me, this is the most devastating thing I have ever done. My name as well as my reputation is down the tubes, but the age of peace is saved and will manifest itself.

I have had my traveling orders and documents since the new moon. Don't be offended, but secrecy was of the utmost importance as a strategist well-knows.... I have no words to say or excuses. I obeyed my orders to the letter, since St. Thomas [the Virgin Islands], i.e. my return from there.

Because of Patrick's absolute insistence that he represent himself, the court granted the United States' motion for a psychological examination. The examiner from the prison medical center in Springfield, Missouri stated:

In regard to the question asked by the court, Mr. Patrick is not suffering from a mental disorder or defect which would adversely affect his ability to understand the nature and consequences of the proceedings against him or to assist properly in his own defense. Mr. Patrick has expressed a desire to act as his own attorney.... His determination to go pro se is considered to be volitional and not due to mental illness. It is this examiner's opinion that Mr. Patrick is competent to stand trial.

The district court arraigned Patrick on November 30. Patrick expressed his desire to waive legal counsel at his arraignment. After the court told Patrick of his right to counsel and the right to have appointed counsel, Patrick stated, "in the fact that this crime carries a life sentence, and if that is the sentence to be imposed upon a finding of guilty, I wish that blame to fall upon my head rather than someone else." Despite Patrick's expressed desire to do all of his own advocacy, the court appointed an Assistant Federal Public Defender to assist Patrick in an advisory capacity.

At Patrick's request, and with advance notice to advisory counsel, the Assistant United States Attorney met with Patrick to discuss various concerns including representation, the nature of the charges, the constitutional right to trial, and the sentencing procedure.

At a December 20 pre-trial, the court again addressed the issue of self-representation, concluding, "[i]t is, of course, your right not to have counsel and to represent yourself, and I respect that right, but I urge you to rethink that position carefully." At another pre-trial meeting on January 22, 1990, the court went through a question and answer sequence addressing the potential disadvantages of self-representation. Patrick expressed his understanding and maintained his desire to proceed *pro se.* Immediately thereafter, a jury was empaneled and on January 24 the jury found Patrick guilty of kidnapping Crystal Wise.

The court sentenced Patrick on June 21, finding that a sentence "substantially greater" than the 87–108 month guideline range was appropriate. The court departed upward under Federal Sentencing Guidelines § 5K2.0 to arrive at a total sentence of 180 months or 15 years.

■ Patrick first asserts the district court failed to advise him of the charge and the potential penalties, thus making his waiver of the right to counsel invalid. The legal standard for the waiver of the right to counsel is well settled, it must be knowingly and intelligently made. *Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 888, 8 L.Ed.2d 70 (1962). This circuit has determined that a sufficient inquiry by the court is necessary before a waiver of the right to counsel can be made. *United States v. McDowell,* 814 F.2d 245, 250 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987). The record in this case details such an inquiry. The record contains numerous explanations and cautions by the court to Patrick regarding the hazards of self-representation. The record establishes Patrick's understanding of the charges against him and the possible penalties. Patrick expressly stated in a pre-trial meeting that he did not want a lawyer *because of* the risk of a life sentence. Throughout the proceedings, Patrick repeated his desire to represent himself. His assertion that these waivers

were invalid because he did not know of the charges against him or the possible penalties is not supported by the record. Indeed, on this record he was informed.

 Patrick also asserts that the court erred in departing under Federal Sentencing Guidelines § 5K2.0. This section allows for departure when "there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." United States Sentencing Commission, *Guidelines Manual*, § 5K2.0 (Nov. 1990). It addresses situations where the nature of the offence is so rare that the Guidelines do not take into account all the relevant culpable behavior involved. *See United States v. Joan*, 883 F.2d 491 (6th Cir.1989).

When departing under this section, a district court must "identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure." *United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989) (quoting *United States v. De Luna–Trujillo*, 868 F.2d 122, 124 (5th Cir.1989), *cert denied*, — U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990)). Here, the district court identified two aggravating factors as its basis for departure. First, the court noted "this is a crime of kidnapping of a specific victim for a specific purpose," i.e. "the defendant intended to have this child to himself and eventually ... when the child reached about the age of thirteen, [he] intends to marry her so that she would be the mother of his children." Second, the court determined it is "absolutely clear that this defendant, whether for the religious reasons stated by him at various times, or for other reasons, intends to complete the crime ... no matter what the period of incarceration might be, he intends to find this child and complete facilitating her reaching her destiny, at least her destiny as he sees it."

Federal kidnappings "generally encompass three categories of conduct: limited duration kidnapping where the victim is released unharmed; kidnapping that occurs as part of or to facilitate the commission of another offense (often, sexual assault);

and kidnapping for ransom or political demand." *Guidelines Manual*, § 2A4.1, comment. (backg'd.). Patrick's conduct does not fit into any of these general kidnapping categories; his admitted purpose in kidnapping Crystal was to possess her and keep her from her parents for her entire life. Patrick's purpose and conduct are indisputably rare and sufficiently aggravating to warrant departure under § 5K2.0. *See Guidelines Manual*, § 5K2.8, p.s. (court may increase sentence for unusually heinous conduct).

Thus, there being no error, the judgment of the district court is affirmed.