972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Aram ALKAZOFF, Defendant-Appellant.
 No. 90-2006.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant, Aram G. Alkazoff, appeals his conviction for drug trafficking and firearm charges. He asserts that the search warrant for his home was not supported by probable cause; that his confession was not voluntary; that his waiver of the right to counsel was not made knowingly and intelligently; and that it was an abuse of discretion to deny his request for a continuance to retain counsel and to prepare to try the case himself. Finding these contentions lacking in merit, we affirm the conviction.
 
 I.
 
 2
 In December 1989, Detroit police received an anonymous telephone tip that Robert Soroka was selling heroin from 10053 Virgil in Redford Township. According to the informant, Soroka obtained the drugs from the driver of a Volkswagen convertible, who was an Arabic male with graying hair and a dark moustache. The caller also told police that Soroka usually received his heroin supply between noon and 1:00 p.m.
 
 
 3
 Following this tip, the police began surveillance of the house. According to the affidavit accompanying the request for a search warrant, the officers observed a series of vehicles parking near the Virgil address. People from these vehicles entered the house, remained inside for several minutes, and quickly left.
 
 
 4
 Officers saw a Volkswagen, registered to defendant, park in front of the house. The driver fit the description of the heroin supplier as given by the informant. An officer followed the Volkswagen to 13557 Westbrook and observed the driver enter that house. The police also discovered that defendant had a prior arrest record for narcotics violations, as did Soroka.
 
 
 5
 Further surveillance at the Westbrook address recorded Soroka visiting the house on several occasions and meeting with people parked in vehicles a short distance away. Vehicular traffic similar to that at the Virgil address was also observed at the house on Westbrook, but the traffic never occurred at both locations on the same day. The same people appeared at both houses on numerous occasions.
 
 
 6
 The surveillance lasted from December 19, 1989 until January 31, 1990, when a search warrant was obtained for the Westbrook address. That house was rented to Karen Estrada, who lived there with defendant.
 
 
 7
 During the execution of the search warrant, the police seized narcotics paraphernalia, 124 grams of heroin, $21,150 in cash, and a loaded semi-automatic pistol. Following the search, the police arrested defendant and Estrada.
 
 
 8
 After their arrest, Estrada and defendant were brought to DEA headquarters for processing, where defendant became concerned about Estrada's welfare because she was pregnant, and asked whether she would be charged. One of the agents told him it was possible, since it was her house and no one else had claimed responsibility for the heroin. Defendant then said that he would take responsibility and wanted to talk to the agent-in-charge.
 
 
 9
 The agent-in-charge read defendant his Miranda rights, but before anything further could happen, a representative from pretrial services arrived and interviewed defendant for fifteen minutes. Defendant was then returned to the processing area for an interview by the agents. When he again expressed concern about Estrada, an agent told him that she would be released and not charged. Defendant then said that the items seized from the Westbrook house were solely his, and that Estrada was not involved. He also identified the source of the heroin. He was advised of his rights a second time, and executed a DEA Statement of Rights and Waiver form, restating what he had told the agents.
 
 
 10
 Following a jury trial, defendant was convicted of possession with intent to distribute over 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1), use of a firearm in relation to a drug offense in violation of 18 U.S.C. § 924(c), and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).
 
 II.
 A. Validity of the Search Warrant
 
 11
 Defendant asserts that the search warrant was not supported by probable cause because there was insufficient information in the tip to show reliability or credibility of the informant as to the drugs at the Westbrook address. Specifically, he notes that the informant's statements dealt only with the Virgil address, not the Westbrook address; that the agent's affidavit did not indicate the informant's veracity or basis of knowledge; and that there was no detail in the affidavit concerning actual observation of narcotics. In addition, defendant argues that the government's surveillance did not add anything to the informant's statements because it revealed only non-criminal conduct.
 
 
 12
 The Fourth Amendment of the United States Constitution guarantees that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The validity of a search warrant is to be analyzed under the "totality of the circumstances" test set out by the Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983). There, the Court pointed out that "the issuing magistrate [should] make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Id. (citing Jones v. United States, 362 U.S. 257, 271 (1960)).
 
 
 13
 In this case, like Gates, there was a specific tip which involved the Virgil address which led to several days of surveillance by drug enforcement agents. This observation in turn led them to the Westbrook address. While the initial tip was conclusory in that it did not detail the basis for the informant's knowledge, the complete affidavit was sufficient to support a probable cause determination because the information resulting from the tip was corroborated and expanded upon by subsequent police investigation. Gates specifically recognized the "value of corroboration of details of an informant's tip by independent police work.... [A]n affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.' " Gates, 462 U.S. at 241-42 (citing Jones at 269). The government's surveillance revealed significant traffic which conformed to a pattern of drug related activity. Defendant, who fit the informant's description of Soroka's heroin supplier, was seen numerous times at both addresses, and Soroka visited the Westbrook address on several occasions. In addition, the police were aware that both Soroka and defendant had a history of involvement with drugs.
 
 B. Voluntary Confession
 
 14
 Defendant complains that, since he was extremely concerned about his girlfriend, the incriminating statements he made to the agents following the arrest were not made voluntarily.
 
 
 15
 According to the Supreme Court, relinquishment of the right against self-incrimination
 
 
 16
 must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.... Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.
 
 
 17
 Moran v. Burbine, 475 U.S. 412, 421 (1986) (citations omitted).
 
 
 18
 The test for voluntariness of a confession involves three factors. Threshold to the determination that a confession was "involuntary" for due process purposes is the requirement that the police "extorted [the confession] from the accused by means of coercive activity." Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. Finally, petitioner must prove that his will was overborne because of the coercive police activity in question.
 
 
 19
 McCall v. United States, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989) (citations omitted).
 
 
 20
 Defendant's waiver of his Miranda rights and his subsequent incriminating statements were made knowingly and voluntarily. The record does not indicate that the agents' behavior was coercive. They did not use Estrada's well-being as a bargaining tool with defendant; to the contrary, an agent told him early on that she would not be charged. The record certainly does not compel a conclusion that any conduct of the agents was the crucial motivating factor behind defendant's decision to confess.
 
 
 21
 Defendant also argues that he was not timely arraigned and that his incriminating statements should be suppressed on this basis. Defendant arrived at the DEA office at 4:15 p.m. He was processed and advised of his Miranda rights at 4:25 p.m. At 4:28 p.m., he was interviewed by pretrial services; the interview lasted until 4:45 p.m. He was then interviewed by the DEA, and brought before the magistrate for arraignment at 5:45 p.m. The whole process took approximately ninety minutes.
 
 
 22
 Following an arrest, a person must be taken "without unnecessary delay before the nearest available federal magistrate." Fed.R.Crim.P. 5(a) (emphasis added). "[A] confession ... shall not be inadmissible solely because of delay in bringing such person before a magistrate ... if such confession is found ... to have been made voluntarily." 18 U.S.C. § 3501(c) (1985).
 
 
 23
 As noted above, defendant's confession was voluntary, so any delay in arraignment is not a basis for suppressing the evidence. See United States v. Yates, 553 F.2d 518, 519-20 (6th Cir.1977). Furthermore, the delay was not unnecessary in that much of the time was consumed with processing and the pretrial interview.
 
 C. Waiver of Right to Counsel
 
 24
 On the second day of trial, during the jury selection, defendant informed the court that he wished to represent himself. The judge carefully inquired into whether he was knowingly and intelligently waiving his right to counsel, and then granted the request. He now argues that based upon his psychological state, he was incapable of waiving his right to counsel voluntarily, knowingly, and intelligently. He asserts that, since he was confined to the psychiatric unit of the jail, was diagnosed as having suicidal tendencies, had emotional outbreaks, had recently had a brother die of AIDS, suffered depressive mood disorder, and had to face Estrada testifying against him, his psychological state was such that he could not make any waiver of his right to counsel knowingly, voluntarily, or intelligently.
 
 
 25
 A defendant has the right of self-representation if the waiver of the right to counsel is made voluntarily. Faretta v. California, 422 U.S. 806, 835 (1975). This court requires that a defendant who chooses to forego counsel must be warned before his right to counsel will be considered waived. United States v. McDowell, 814 F.2d 245, 250 (6th Cir.), cert. denied, 484 U.S. 980 (1987).
 
 
 26
 The district court in this case fully complied with the McDowell requirements, including the appointment of standby counsel. The district judge stated that he had
 
 
 27
 done everything I can to convince him not to represent himself but he will not be convinced ... [He has] insisted that he represent himself, even though, as I advised him, he would be far better defended by [court appointed-counsel]. ... Defendant is a high school graduate with three years of college, he insists on representing himself, so I will allow him to do so.
 
 
 28
 The record does not indicate that defendant suffered from any pervasive mental disorder which would interfere with his decision-making ability. See United States v. Patrick, 935 F.2d 758, 760 (6th Cir.), cert. denied, 112 U.S. 269 (1991). Notwithstanding his unfortunate personal life and understandable emotional reactions, nothing in the record indicates that the district court's determination was erroneous.
 
 D. Continuances
 1. Continuance to Select Counsel of Choice
 
 29
 On the first day of trial, prior to jury selection, defendant requested a continuance so that he could hire an attorney of his own choosing, rather than continue to use a court-appointed one. The court denied this request.
 
 
 30
 The right to assistance of counsel guaranteed by the Sixth Amendment includes the right to counsel of one's own choosing if a defendant is financially able to retain counsel. United States v. Johnston, 318 F.2d 288, 291 (6th Cir.1963). This right, however, is not absolute in that it must be "balanced against the court's authority to control its own docket." Lockett v. Arn, 740 F.2d 407, 413 (6th Cir.), cert. denied, 478 U.S. 1019 (1984).
 
 
 31
 Because defendant had three months prior to trial to obtain counsel of his choice, and in view of his claim of indigency, the timing of his request for a continuance raises the suspicion that it was merely a delaying tactic. See United States v. Fowler, 605 F.2d 181, 183 (5th Cir.1979), cert. denied, 445 U.S. 950 (1980) ("The right to assistance of counsel ... may not be put to service as a means of delaying or trifling with the court."). Nothing in the record explains why he waited until the trial was to begin to decide to hire an attorney. Under the circumstances, we are unable to say that the denial of the continuance was an abuse of discretion.
 
 2. Continunace to Prepare for Trial
 
 32
 After the jury was selected and after the district court agreed to defendant's request to represent himself, he requested a one-day adjournment to prepare for trial. He claimed that he was unable to prepare because jail officials turned off the lights at 10:00 p.m. This request was denied.
 
 
 33
 Given defendant's other last-minute motion for a continuance, the trial judge reasonably assumed that he was trying to delay his trial. His denial of equal protection claim is without merit because nothing in the record indicates that during the three-month time period prior to trial, the lights-out policy discriminated against defendant as compared with other defendants.
 
 III.
 
 34
 For the reasons set out above, the judgment of the district court is affirmed.