**Charles B. SWIGER, Petitioner–Appellant,**

v.

**Eddie BROWN, Parole Officer; Harry Hagemann, Deputy Director Of Ohio Parole And Community Services, Respondents–Appellees.**

No. 02–3907.

United States Court of Appeals, Sixth Circuit.

Jan. 27, 2004.

Thomas R. Wetterer, Jr., Theresa G. Haire, Public Defender's Office, Columbus, OH, for Petitioner–Appellant.

Christopher D. Stock, M. Scott Criss, Asst. Atty. General, Stephanie L. Watson, Asst. Atty. General, Office of the Attorney General, Columbus, OH, for Respondent–Appellee.

Before KEITH, MARTIN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Charles Swiger seeks review of a district court decision denying his petition for relief under 28 U.S.C. § 2254. Before the district court, Swiger claimed he was being held in state custody in violation of his federal constitutional rights because his state court conviction arose from a trial in which he exercised his Sixth (and Fourteenth) Amendment right to self-representation under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and because he failed to make a knowing and intelligent waiver of his right to appointed counsel. Applying the Antiterrorism and Effective Death Penalty Act of 1996, the district court rejected Swiger's claim because the state courts did not unreasonably apply clearly-established federal law. As we agree with the district court's conclusion, we affirm.

I.

On October 3, 1994, a grand jury based in Tuscarawas County, Ohio indicted Charles Swiger for breaking and entering in violation of Ohio Rev.Code Ann. § 2911.13 and for grand theft in violation of Ohio Rev.Code Ann. § 2913.02. He was released from jail on bond on November 4.1994. The trial court assigned Public

Defender Tarin Hale to serve as Swiger's counsel and set a trial date for January 18, 1995. Swiger, however, failed to appear for the trial and was taken back into custody.

On February 1, 1995. Swiger filed a pro se motion requesting that the court dismiss his attorney, appoint new counsel for him and continue his trial date. On February 13, 1995, the trial court held a hearing at which Swiger argued that his attorney should be dismissed because Hale (1) advised Swiger that he likely would be convicted based on his criminal history, (2) failed to raise a speedy trial issue that had been discussed with Swiger several months earlier, (3) did not obtain transcripts of a preliminary hearing before the scheduled trial date, (4) did not move for a continuance based on the expected filing of a new indictment and (5) did not move for discovery. After hearing testimony from Hale and the assistant prosecuting attorney, the trial court concluded that there were insufficient grounds to remove Hale as Swiger's counsel. It then gave Swiger three choices: continue with Hale as counsel, obtain another public defender as counsel or represent himself. Swiger made it clear that he did not want to represent himself, but also indicated that he would not keep Hale as counsel or permit another attorney from the public defender's office to represent him. Another lawyer from the local public defender's office, Swiger believed, would be "biased" against him. Pretrial Hr'g Tr. at 35.

Throughout the hearing, it bears adding, Swiger showed an understanding of the charges brought against him and the potential sentence he would face if he were found guilty at trial. He realized the necessity of having "to deal with" his criminal past. And he showed an understanding of his right to appointed counsel in saying that he was not well-versed enough to represent himself at trial. Neverthe-

less, he also reiterated his distaste for having Hale represent him in court. Unmoved, the trial court told Swiger it would not appoint private legal counsel (in view of the additional expense to the government) and that he would have eight days (when the trial was scheduled to start) to consider which of the three options to choose.

When the trial began on February 21, 1995. Swiger objected to the proceedings moving forward without the appointment of new private counsel. The trial court ordered the trial to start. and Swiger proceeded to represent himself. At the conclusion of the trial, a jury found Swiger guilty on both counts and the judge sentenced him to consecutive prison terms of two to five years on count one and three to ten years on count two. Swiger appealed to the Fifth District Court of Appeals for Tuscarawas County, which rejected each of his claims. *State v. Swiger*, No. 95AP030018, 1996 WL 243795 (Ohio Ct. App. Mar. 27, 1996). Among other things, the court determined that Swiger's Sixth Amendment rights were not violated because the trial court gave him ample choices in determining how to proceed.

After the appeals court rejected his motion for reconsideration. Swiger appealed to the Ohio Supreme Court, which denied his request for a discretionary appeal. *State v. Swiger*, 77 Ohio St.3d 1412, 670 N.E.2d 1001 (1996). Swiger next sought review in the United States Supreme Court, which denied certiorari. *Swiger v. Ohio*, 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d 179 (1997).

On April 3, 1998, Swiger filed this petition for habeas corpus relief under 28 U.S.C. § 2254. and did so through counsel from the state public defender's office. In the petition, he claimed he had been denied his right to the assistance of counsel guaranteed by the Sixth and Fourteenth

Amendments because the state trial court, among other alleged failings, did not fully apprise him of the risks of self-representation. A magistrate judge recommended that the petition be denied, and the district court issued an eleven-page opinion denying the petition. At the same time, the district court issued a certificate of appealability authorizing this appeal.

## II.

We apply increasingly-familiar principles in reviewing Swiger's claim. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant relief under 28 U.S.C. § 2254 with respect to any claim that was adjudicated on the merits in state court, unless the state court's adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" a decision by the Supreme Court when the state court faces a set of materially-indistinguishable facts yet reaches an opposite result. *See Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision involves an "unreasonable application" of clearly-established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Both directives come to this: A district court may not grant a writ of habeas corpus simply because the state court incorrectly applied federal law, *id.* at 410–11, 120 S.Ct. 1495, but only because the state court's interpretation was objec-

tively unreasonable as measured by decisions of the United States Supreme Court, *id.* In applying these principles, we review a district court's denial of a writ of habeas corpus de novo. *See Buell v. Mitchell,* 274 F.3d 337, 344 (6th Cir.2001).

This claim for habeas relief implicates several constitutional doctrines. As an initial matter, the Sixth Amendment gives all criminal defendants the right to hire (and pay for) counsel of their own choosing. *See Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). It gives indigent criminal defendants the right to have the court appoint (and the State pay for) counsel to assist them in their defense. *See Gideon v. Wainwright,* 372 U.S. 335, 339–40, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). And it gives all criminal defendants the right to represent themselves. *See McKaskle v. Wiggins,* 465 U.S. 168, 173–74, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). As to indigent criminal defendants like Swiger, who cannot afford their own counsel, there necessarily are just two options. On the one hand, the Sixth Amendment entitles them to appointed counsel, though not necessarily the State-paid-for counsel of their choice. *See Caplin & Drysdale v. United States,* 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."); *Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). On the other hand, the Sixth Amendment entitles them to reject the counsel offered by the State and to proceed alone in defending the criminal charges against them. *Faretta,*

422 U.S. at 820–21, 95 S.Ct. 2525. To invoke one of these constitutionally-protected rights generally requires the rejection of the other.

When a defendant opts for self-representation. *Faretta* says that "the accused must 'knowingly and intelligently' forgo those relinquished benefits" traditionally associated with the right to counsel. *Id.* at 835, 95 S.Ct. 2525 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). To ensure that the invocation of one right (self-representation) is voluntary and the waiver of the other right (appointed counsel) is voluntary, knowing and intelligent. *Faretta* explains that the accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Whether a defendant's choice was made with "eyes open" generally "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Zerbst,* 304 U.S. at 464, 58 S.Ct. 1019. Both parties accept these relevant principles, and each one agrees that they have been clearly established by the Supreme Court.

What separates the parties is the extent to which the Federal Constitution imposes additional procedural requirements on trial courts to ensure that criminal defendants like Swiger have proceeded in a voluntary, knowing and intelligent manner. While the *Zerbst* test for the waiver of a constitutional right has wide currency, different procedural requirements have been applied to ensure that a waiver is knowing and intelligent in different constitutional settings. *Compare Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that detailed warning requirements are generally required before individuals may waive their Fifth Amendment right not to incriminate themselves), *and United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (explaining the necessity of detailed warning requirements prior to the acceptance of a plea bargain), *with Ohio v. Robinette,* 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (rejecting the necessity of *Miranda*-style warnings for waiver of Fourth Amendment rights).

In fact, the Supreme Court has not elaborated on the procedural requirements, if any, that a trial court must implement when applying the *Zerbst* standard in a self-representation setting like this one. This Court, to be sure, has instructed trial courts within the Sixth Circuit to conduct formal inquiries when faced with requests by criminal defendants to proceed pro se. *See United States v. McDowell,* 814 F.2d 245, 250 (6th Cir.1987) ("A model inquiry for district judges is set forth in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986).... In the future, whenever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself."). *See also United States v. Modena,* 302 F.3d 626, 630 (6th Cir.2002); *United States v. Patrick,* 935 F.2d 758, 760 (6th Cir. 1991). But this is a requirement imposed on federal district courts within the Sixth Circuit, and AEDPA at any rate precludes us from looking at court of appeals precedent as the benchmark for ascertaining the clearly-established federal law that a state

court must follow. *See Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir.2003) (observing that "[t]he statute means what it says .... that habeas relief may not be granted unless the state court's decision was either contrary to ... clearly established federal law, *as determined by the Supreme Court of the United States*, or involved an unreasonable application of ... [such] law.") (quotations omitted) (emphasis added).

As a general matter, other federal courts of appeal have concluded that *Faretta* does not clearly establish that formal warnings by the trial court are required to establish a knowing, voluntary and intelligent waiver of the right to counsel. *See, e.g., Dallio v. Spitzer*, 343 F.3d 553, 564 (2d Cir.2003) ("[N]either *Faretta*'s holding nor its *dictum* clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional prerequisite to every valid waiver of the right to counsel....."); *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir.2002) (construing *Faretta* in a federal habeas case to mean "that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding pro se." but determining that "failure to do so ... is not an error as a matter of law"); *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir.2000) (construing *Faretta* in a federal habeas case to mean that "a specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had this required knowledge from other sources") (quoting *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir.1988)).

In one sense, Swiger has a compelling claim under the case law, but in another he does not. What makes Swiger's case initially appear strong is that the state trial court never formally or informally explained to him the risks of self-representation. But that is not because the trial judge failed to spend a considerable amount of time dealing with the issue, and it does not mean that Swiger did not proceed with his "eyes open" in waiving his right to counsel. In truth, the court faced a defendant who seemed more interested in finding ways to delay his criminal trial than in dealing with the question of his representation.

Recall that the court initially set a trial date for January 18, 1995. Up to that point. Swiger had made no complaints to the court about counsel from the local public defender's office and had given no indication to the court that he wished to represent himself. Instead of attending the trial. however, he disappeared. Law enforcement officials tracked him down, and at that point he filed a motion for new counsel and for a continuance of his trial date. On February 13, 1995, the trial court held a lengthy hearing about the motions, which was attended by Swiger, Hale and the local prosecutor. In the end, the court concluded that Swiger's ineffective-assistance complaint about attorney Hale was "frivolous." Ultimately, the court gave Swiger three choices–representation by Hale, representation by another lawyer from the public defender's office or self–representation–and set a new trial date for February 21, 1995, which was eight days later. Both at the end of the hearing and on the morning of trial, Swiger indicated that he did not wish to accept any of these options. All that he would accept, he claimed, was the appointment of private counsel. At the start of the trial on February 21, Swiger again essentially rejected all three options. And when the court did not grant Swiger's motion for a continuance, he remained at the trial but did little self-representation.

On this unusual record, the district court correctly concluded that the state trial and appellate courts did not unreasonably apply clearly-established federal law or fail to follow a Supreme Court precedent dealing with virtually-identical facts. Adequate evidence supports the state courts' conclusions that Swiger proceeded with his "eyes open" and that his waiver of counsel was knowing, voluntary and intelligent, at least in realizing what he was giving up. Swiger was hardly a novice in dealing with the criminal justice system. He had faced criminal charges at least twice before. And several of his actions in the case show that he was well aware of his right to appointed counsel as well as the risks of self-representation. His pretrial motion for substitute counsel, his testimony at the hearing on that motion, and his formal protest at the start of the trial against being tried without counsel all show that he well knew the benefits of counsel. To determine that a valid waiver has been enacted, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand," *Von Moltke v. Gillies*, 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948)–but no more. There is nothing to indicate that the Supreme Court has clearly established that a trial court, faced with facts like these, must further investigate the circumstances of the waiver. The record also confirms that Swiger understood the charges against him and the sentence that might arise from them and that he understood that if he rejected Hale's representation (or that of another public defender) his only option was to represent himself. Nor did the state trial court force Swiger to make a sudden choice. At a minimum, he had eight days to think through the potential pros and considerable cons of representing himself.

Lastly, this is not a typical self-representation case because (1) Swiger did not seek self-representation. (2) Swiger ex-plained to the trial court why he did not want it, and (3) in reality (given his passive involvement in the trial) Swiger rejected even that option. The problem in this case was not Swiger's lack of understanding about the risks of self-representation, which he understood. The problem was that a defendant cannot be permitted to stop the criminal justice process in its tracks by rejecting appointed counsel *and* refusing self-representation, which is effectively what he did. Perhaps in other circumstances, it would have been wise for the trial court to grant Swiger's motion for a continuance once his decision became clear. But in view of Swiger's failure to appear for his first trial and in view of the eight days the court had given him to think through his options, the approach the court took was a defensible one.

Given these circumstances, the district court did not err in rejecting Swiger's habeas claim. To conclude otherwise would require us to hold that Swiger had a clearly-established Sixth Amendment right to at least one of these options: (1) State-paid-for counsel of his choice (*e.g.*, an attorney besides Hale or anyone else in the local public defender's office); (2) warnings about the risks of self-representation even after he had shown that his waiver was voluntarily, knowingly and intelligently made; or (3) authority to reject counsel *and* self-representation. The first option was rejected by the Supreme Court in *Slappy*, 461 U.S. at 14, 103 S.Ct. 1610, and in *Caplin & Drysdale*, 491 U.S. at 624, 109 S.Ct. 2646 (noting that an indigent defendant does not have the right to appointed counsel of his choice). The second option, while a commendable practice, has not been clearly established by the Supreme Court. *See Faretta*, 422 U.S. at .835, 95 S.Ct. 2525 (stating that a defendant "should be made aware of the dangers and disadvantages of self-representation"); *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019

(pointing out that each case generally depends "upon the particular facts and circumstances surrounding [it], including the background, experience, and conduct of the accused"). And the third option has never been established by the Supreme Court or any court.

Nor has Swiger answered the district court's more basic objection to his conduct in front of the state trial court.

> Petitioner's request appears to have been little more than an attempt to delay a trial that he had already postponed once by failing to appear. Indeed, after the close of his trial. Petitioner expressed a willingness to have Attorney Hale represent him on appeal. Although the trial court judge decided to appoint an attorney from outside the Public Defender's Office. Petitioner's sudden change of heart regarding Attorney Hale suggests that his motives in seeking to dismiss him were purely dilatory.

D. Ct. Op. at 8 n. 2.

Contrary to Swiger's claim, *Von Moltke* does not lead to a different conclusion. There, to be sure, the Court discussed the application of *Zerbst* in the self-representation setting. *See Von Moltke*, 332 U.S. at 723–24, 68 S.Ct. 316 ("The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused–whose life or liberty is at stake–is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." *Zerbst*, 304 U.S. at 465, 58 S.Ct. 1019; *see also Adams*, 317 U.S. at 270, 63 S.Ct. 236. To discharge this duty properly in light of the strong presumption against the waiver of the constitutional right to counsel. *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019; *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942), a

judge must investigate as long and as thoroughly as the circumstances of the case before him demand.... To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."). There, too, the Court said that "[a] judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." *Id.* at 724, 68 S.Ct. 316. But *Von Moltke* is a case in which the defendant waived her right to an attorney and subsequently pled guilty, *id.* at 715, 68 S.Ct. 316. a setting where different rules understandably apply. *See Broce*, 488 U.S. at 570, 109 S.Ct. 757 (explaining the necessity of detailed warning requirements prior to the acceptance of a plea bargain).

Finally, we agree with the district court that *Fowler v. Collins*, 253 F.3d 244 (6th Cir.2001). which is also a habeas case, does not alter this conclusion. In concluding that "a judge must thoroughly investigate the circumstances under which the waiver [of counsel] is made," *Fowler* acknowledged that "the extent to which a court must probe into these elements in order to render a waiver of counsel proper varies from case to case." *Id.* at 249. The unusual facts of this case do not present an apt analogy to *Fowler*, where the defendant made it clear he *wanted* to proceed pro se. where the record included no evidence that he understood the dangers and disadvantages of self-representation, where the court did not proceed to explore the basis for his waiver of counsel and where there was suggestion that the defendant's rejection of counsel was being

used as a delay tactic. *Id.* at 247. In contrast to *Fowler*, no violation of a clearly-established constitutional right occurred here.

### III.

For the foregoing reasons, we affirm.