*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SAMUEL KING,

　　　　　　　*Petitioner-Appellant,*

　　　*v.*

DAVID BOBBY, Warden,

　　　　　　　*Respondent-Appellee.*

> No. 04-3844

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00660—George C. Smith, District Judge.

Argued: November 29, 2005

Decided and Filed: January 10, 2006

Before: GUY and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Stuart A. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Stuart A. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

## OPINION

---

　　　RALPH B. GUY, JR., Circuit Judge. Petitioner Samuel King appeals from the district court's denial of his petition for a writ of habeas corpus. King pleaded guilty in Ohio state court to a number of state charges. King was not accompanied by an attorney during the plea negotiation, plea hearing, or sentencing hearing, and he claims he was unconstitutionally denied his right to counsel. We find that he did execute a valid waiver of his Sixth Amendment right to counsel, and therefore we affirm.

---

[*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

Samuel King was indicted on April 7, 1999, by an Ohio grand jury for failing to pay child support, providing a false application for a certificate of registration, making false promises through advertising, fraudulent dealings, passing bad checks, theft by deception, and securing writings by deception. Two months later, the Ohio grand jury issued another indictment charging King with failing to file state income tax; filing a false, incomplete, or fraudulent tax return; fraudulent dealings; and theft by deception. King pleaded not guilty.[1]

The trial court summarized King's attempts to retain counsel as follows:

Defendant began this case claiming that he would be represented by a Lisbon Attorney. Pre-trials were set when the Lisbon Attorney was not retained and Defendant always assured the Court that he would retain that Attorney. After a great deal of wasted time, Defendant eventually declined to retain that counsel and sought new counsel in Columbus, Ohio.

Again, Defendant repeatedly assured the Court that he would retain Columbus counsel and that no further delays would result from his actions. After a considerable time was wasted, Defendant again declined to retain that counsel and chose his current counsel (third Attorney) [Uche Mgbaraho].

Counsel for Defendant appeared on arraignment day for other cases and announced that day that he was being retained in the King case also. While on the record, the Court very clearly explained to counsel all the delays that had occurred with the first two (2) Attorneys and that the Court would not entertain a Motion to Withdraw even if counsel was not paid.

The court had scheduled King's trial for Monday, March 13, 2000. About two months before trial, Mgbaraho moved to withdraw as counsel for King and King's wife, Gloria King, a codefendant. King objected. The trial court denied Mgbaraho's motion because he had been warned that nonpayment would not be grounds for withdrawing.[2] On February 25, 2000, Mgbaraho once again moved to withdraw as counsel for Samuel and Gloria King. The basis of Mgbaraho's motion was that King lacked confidence in Mgbaraho and had asked Mgbaraho to perform unethical acts, King had accused him of colluding with the state to abuse King's rights, King had not paid Mgbaraho's legal fees, and Mgbaraho felt there was a conflict of interest in representing both Sam and Gloria King. The trial court granted Mgbaraho's motion as to his representation of Gloria King and granted a continuance in her case to allow her time to retain new counsel. The trial court denied the motion as to Samuel King, however, because of (1) the numerous delays in the case due to King's previous failures to hire counsel; (2) the specific warning the court issued to Mgbaraho before he entered his appearance on behalf of King regarding the court's reluctance to allow him to withdraw; and (3) King's requests for Mgbaraho to perform unethical acts would not be cured by King retaining different counsel.

On March 8, 2000, Mgbaraho moved for the court to reconsider its ruling because King had fired him. He also moved for a continuance to allow King time to retain or be appointed new counsel. The trial court held a hearing on Mgbaraho's motion on Friday, March 10, 2000. At that

---

[1]The record does not indicate whether King was represented at his arraignment.

[2]Mgbaraho also requested a continuance of the trial date because the state had recently produced voluminous documents and Mgbaraho claimed he did not have time to adequately review them. The court denied Mgbaraho's request because the vast majority of the documents were King's own records to which he had access.

hearing, King told the trial court that he had discharged Mgbaraho from the case and asked for time to meet with a new attorney, Dennis McNamara, whom King said he had already met several times. The court stated that it already spoke with McNamara, and McNamara told the court that he would not represent King without a large retainer. King told the court that he had recently inherited over $200,000, and as proof that he had the money he pointed through the window to a new car in the parking lot, which he claimed he bought with cash. The court clearly did not believe King:

> I am firmly convinced that you will never hire and keep a lawyer. That no matter how much time I give you, when the time for trial comes, that lawyer will either be unpaid, inappropriate, fired or whatever and I don't believe that giving you a continuance will solve any legitimate problem that you now claim you have because if I give you the time to hire and fire two more lawyers, that's what's going to happen. If I give you time to hire and not pay and fire ten lawyers, that's what's going to happen. I've had it."

Instead of granting King's request for a continuance in its entirety, the trial court *sua sponte* bifurcated King's trial. It ordered that the trial on the factually uncomplicated counts would proceed as scheduled, but that the remaining counts would be tried at a later date. As for Mgbaraho's motion to reconsider his motion to withdraw, the court ordered Mgbaraho to serve as "standby" counsel to King. The court explained Mgbaraho's new role as follows:

> Now, that doesn't mean that you have to try the case and that doesn't mean that you have to talk to Mr. King and that doesn't mean that Mr. King has to talk to you. If you - - but you need to be available and if he decides he wants to consult with somebody, fine. If he wants you to be fired and he doesn't want to talk with you and he doesn't want you in this case, that's his decision. It will not be my decision, nor will it be yours that you have nothing to do with this case. It will only be Mr. King's decision but I - - but you are going to have to be here.

After the court identified which counts of the indictments would be tried first and discussed other matters, he asked if King had any questions. King asked "so, essentially, I'm trying this myself; correct?" The court responded, "That's up to you. . . . I mean, you got Uche [Mgbaraho] over here that's standby. The purpose of standby is if you say go, he goes with what limited stuff he's got because bear in mind the two of you - - whatever that relationship has been . . . you still have the right to go out and hire some other lawyer if you can get somebody to do it on such short notice." King then said, "I doubt if I can get someone to do it on short notice but I'd just like to read into record just for the record itself that essentially I have not - - I don't have effective Counsel as granted my right by the Constitution of the United States. I just want to bring that forward as a matter of record and I'll be here Monday morning."

Immediately after the hearing, King met privately with the prosecutor and they reached a plea agreement. Pursuant to the agreement, on March 13, 2000, King pleaded guilty to four of the six counts that were scheduled for trial that day, and all of the remaining counts of both indictments were dismissed. All of the charges against Gloria King were also dismissed. King was not accompanied by counsel or standby counsel. During the plea colloquy, King stated he understood that by pleading guilty he was waiving his rights to a jury trial, to confront and cross-examine his accusers, to compulsory process, to remain silent, and to testify on his own behalf. He stated that he understood the potential penalties the court could impose. The court informed King that he had the right to be represented by counsel and if he could not afford counsel, one would be appointed at no cost. After explaining that right, the court noted that King had recently informed the court that he had inherited more than $200,000, implying that King was ineligible for appointed counsel. King responded, "I don't have it yet, sir." The court did not follow up by asking if King wanted counsel appointed. Before accepting the plea, the following exchange took place:

The Court: . . . Now, with respect to Counsel, you had Counsel which you discharged Friday or effective Friday. So, now I need for you - - I assume you want to go forward - - well, do you want to go forward without counsel?

Mr. King: Yes, sir.

The Court: Okay. And I've already explained to you your right to appointed Counsel. Do you understand that?

Mr. King: Yes, sir.

The Court: I need for you to sign a separate waiver that indicates that you have been told all that and that you waive Counsel but don't sign it until you read it and there's one for each case. That's why you have two of them there.

Okay. Are there any questions that you have about anything we're doing here?

Mr. King: No, sir.

The Court: You sure?

Mr. King: Yes, sir.

The Court: You still want to go through with the plea bargain?

Mr. King: Yes, sir.

At his sentencing hearing later that month, King appeared without new counsel or Mgbaraho. The court sentenced him to serve six months, eleven months, and nine months in prison for three of the offenses, to be served consecutively. He was also sentenced to five years of community control on the fourth offense. Earlier, King admitted that he did not inherit the money or buy the car as he had told the court. The court held King in contempt for lying about inheriting money and purchasing a new car. He was ordered to serve ten days for each contempt citation, to be served consecutively to one another as well as to those sentences imposed for the main offenses.

King appealed, with the assistance of counsel, arguing that he did not waive his right to receive the assistance of counsel and that the trial court failed to advise him of the dangers inherent in self-representation. The Seventh District Court of Appeals of Ohio affirmed his conviction by ruling:

> Relevant to this assignment are the following portions of Crim. R. 44:
>
> > (A) Counsel in serious offenses. Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings * * * unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
>
> > (C) Waiver of counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded * * *.

> (D) Assignment procedure. The determination of whether a defendant is able or unable to obtain counsel shall be made in a recorded proceeding in open court.

Initially, it should be noted that in State v. Kyser (Aug. 10, 2000), Mahoning App. No. 98CA144, unreported, this court reversed the defendant's conviction where he represented himself at a bench trial after the court failed to warn him of the dangers inherent in self-representation. That case is distinguishable as that court failed to inquire on the record whether counsel could be obtained. The court also failed to record any waiver of counsel as required by Crim. R. 44. In fact, *Kyser* signed a rights waiver in which he specifically failed to waive his right to counsel.

In the case at bar, the court held a hearing on appellant's ability to obtain counsel. The record contains evidence that appellant was not indigent. Indeed, appellant told the court that he recently received a $272,000 inheritance from his uncle. He told the court that he just purchased a $30,000 car that the court could see in the parking lot. The fact that these were lies and that appellant may have actually been indigent is not chargeable to the court. Defendants are prohibited from inviting such errors at trial and then arguing them on appeal.

Additionally, the court recorded appellant's waiver of counsel. At the change of plea hearing, the court advised appellant of his right to counsel. Appellant waived his right to court-appointed counsel orally in open court and signed a written waiver.

Moreover, the court essentially provided appellant with an attorney by failing to release Attorney Mgbaraho. Appellant claimed to have four different lawyers on four different occasions: Luther, McNamara, Mgbaraho and once again McNamara. The court indicated that appellant was unreasonably delaying and that his problems with counsel were the product of his stalling tactics. When appellant wished to terminate Attorney Mgbaraho and be granted a continuance, the court refused such request. Although the court failed to grant a continuance as to six charges, the court ordered Attorney Mgbaraho to remain as stand-by counsel. The court desired to order him to remain as actual counsel but appellant refused as he desired to be represented by Attorney McNamara. The court advised appellant that Attorney McNamara could enter his appearance on the day of trial. However, appellant showed up without counsel to plead guilty hours before trial. Due to appellant's agreement to plead, the state dismissed twenty-five out of appellant's twenty-nine charges and dismissed all charges against appellant's wife, resulting in a favorable deal for appellant.

Appellant had multiple opportunities to seek new counsel. He continually precipitated his own problems. He had the availability of Attorney Mgbaraho whom the court refused to release. Importantly, although Attorney Mgbaraho was not actually court-appointed, the court essentially provided him as counsel to appellant by refusing to release him. If appellant was indigent, as he now argues, then we respond that an indigent defendant does not have the right to his choice of counsel. *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92, 93. For the foregoing reasons, appellant's argument is without merit.

The Ohio Supreme Court declined to exercise its discretionary jurisdiction over King's appeal. On July 3, 2002, King filed a habeas petition pursuant to 28 U.S.C. § 2254. The district court accepted and adopted a magistrate judge's recommendation to deny King's petition. This appeal followed.

**II.**

We review *de novo* a district court's legal conclusions in a habeas petition. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). This court usually reviews finding of fact for clear error, "but when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial, and the district court thus makes 'no credibility determination or other apparent finding of fact,' the district court's factual findings are reviewed *de novo*." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (quoting *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir. 1996)).

In determining whether to issue a writ of habeas corpus, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) govern the district court's review of a state court decision. 28 U.S.C. § 2241. Pursuant to the AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id*. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court held that, in order to justify a grant of habeas relief, a federal court must find a violation of law that is "clearly established" from "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." The Court held that a state court's legal decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently that [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 413. Furthermore, the Court held that a state court's legal decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

A federal court, however, may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. Moreover, a federal court making the unreasonable application inquiry should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. Ordinarily, we presume that a factual determination by a state court is correct unless convincing contrary evidence exists. 28 U.S.C. § 2254(d); *Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005).

The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). Plea negotiations, guilty plea hearings, and sentencing hearings are all "critical stages" at which the right to counsel attaches. *United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990); *French v. Jones*, 332 F.3d 430, 439 (6th Cir. 2003). Although the Constitution does not force a lawyer upon a

defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

King's waiver involves the intersection of two rights:  the Sixth Amendment rights to self-representation and to an attorney.  When a defendant invokes one, he necessarily waives the other. We must decide if King asserted his right to self-representation and waived his right to counsel, and whether his waiver was valid.  The government contends that we need not decide if King executed a valid waiver because he did have the assistance of counsel— Mgbaraho as standby counsel. Generally, standby counsel does not satisfy a defendant's Sixth Amendment right to counsel.  There is some support for the proposition that in certain circumstances standby counsel can satisfy a defendant's right to counsel if counsel actively and substantially assists the defendant.  *Compare United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001) (holding that if standby counsel actively participates in a defendant's defense as would active counsel, a defendant's Sixth Amendment right to counsel is satisfied) *with United States v. Davis*, 269 F.3d 514, 520 (5th Cir. 2001) ("Standby assistance of counsel, however, does not satisfy the Sixth Amendment right to counsel.  'The assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel, required by the Sixth Amendment.'" *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991)).  We need not weigh in on whether standby counsel's substantial assistance can satisfy a defendant's right to counsel because here, Mgbaraho did not participate in the case at all after he was designated as standby counsel.  From the time Mgbaraho was so designated, King continued *pro se.*

The district court decided that the reasoning of a recent Supreme Court decision, *Iowa v. Tovar*, 541 U.S. 77 (2004), counseled against granting King's petition.  In *Tovar*, the Court held that a court was not required to warn a defendant who wished to represent himself about some of the specific dangers of waiving an independent opinion as to the viability of the prosecutor's case and potential defenses.  *Id.* at 91-92.  The Supreme Court issued *Tovar* on March 8, 2004, after the Ohio Court of Appeals denied King's appeal, and therefore the district court should not have considered it when it decided if the Ohio court unreasonably applied Supreme Court decisions clearly established at the time of the state court's decision.  *See Williams*, 529 U.S. at 412.

At the time of the state court's decision, the seminal Supreme Court decision regarding a criminal defendant's right to represent himself and waive the assistance of counsel was *Faretta v. California*, 422 U.S. 806 (1975).  There, the Supreme Court held for the first time that a defendant has a constitutional right protected by the Sixth Amendment to represent himself.  *Id.*  The Supreme Court also decided that Faretta waived his right to an attorney knowingly and intelligently.  After his arraignment but well before the trial date, Faretta requested that he be permitted to represent himself because he thought the public defender representing him was handling too many cases to give his case the attention it deserved.  *Id.* at 808.  The judge warned Faretta that waiving the right to an attorney was a mistake, but conditionally accepted Faretta's waiver.  *Id.*  Before trial, the judge reconsidered his earlier ruling, and after quizzing Faretta on hearsay and the state law regarding challenging jurors, the judge decided that Faretta had not made a knowing and intelligent waiver and that he did not have a constitutional right to defend himself.  *Id.* at 808-810.  After the Supreme Court established that Faretta did have the right to represent himself, the Court held that Faretta's waiver of his right to counsel was valid:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits.  Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers

and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire*. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

*Id*. at 835-36 (internal citations and footnotes omitted).

Likewise, in *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), in deciding whether a waiver of counsel at a guilty plea was knowing and intelligent, the Supreme Court stated:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

This case graphically illustrates that a mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel. And this case shows that such routine inquiries may be inadequate although the Constitution "does not require that under all circumstances counsel be forced upon a defendant."

(Citations omitted.)

The facts of this case are atypical of most waiver-of-counsel cases because King did not straightforwardly assert his right to self-representation, and even told the trial court twice that he did not wish to represent himself. Nonetheless, by rejecting all of his options except self-representation, King necessarily chose self-representation. The court instructed him that his only choices were to have Mgbaraho continue to represent him, hire another attorney to represent him, or represent himself. Having rejected Mgbaraho and not hiring another attorney, King chose to represent himself. *See Oreye*, 263 F.3d at 670 (holding that even though a defendant never said he wanted to proceed *pro se*, he waived his right to counsel through his conduct after the district court informed him, on defendant's motion for his attorney to withdraw six days before trial, that he had to choose between working with his current attorney, hiring a new attorney that would be ready to proceed to trial in six days, or representing himself, and he did not keep his attorney or hire a replacement). In addition, despite his protests to waiving counsel at the final withdrawal of counsel hearing, King did waive his right orally and in writing at his plea hearing. Therefore, even though at one point he claimed he did not want to waive his right to counsel, he then did so through his conduct, his words, and his signing of the waiver.

Having found that King waived his right to an attorney, we turn to whether his waiver was knowing and intelligent. This circuit requires federal district courts to conduct the inquiry set forth

in 1 *Bench Book for United States District Judges* 1.02-2 (3d ed. 1986) before accepting a waiver of the right to an attorney. *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987). *See also United States v. Miller*, 910 F.2d 1321, 1324 (6th Cir. 1990). This detailed inquiry is required by this circuit but is not required by clear Supreme Court precedent, and it was not error for the state court to conclude that such an involved inquiry was not necessary here.

The Supreme Court requires a knowing and intelligent waiver, and it is a reasonable application of *Faretta* and *Von Moltke* to look at the whole record, not just the colloquy immediately before the signing of the waiver, to determine if it was knowing and intelligently entered. The record in this case reflects that King knew of his right to be represented by counsel and intelligently waived that right. He mentioned his right to be represented several times to the trial court. At his plea hearing, the court informed him of his right to counsel, the charges to which he was pleading guilty, and the potential penalties for each offense. King had been working with an attorney up until the week before he agreed to the plea bargain and presumably he not only had personal knowledge of the benefits of working with an attorney, he also reaped many of those benefits. Moreover, in two cases involving similar facts, we have decided that waiver by conduct requires no more than the minimum *Farreta* warnings. In *Swiger v. Brown*, 86 Fed. App'x 877 (6th Cir. Jan. 27, 2004) (unpublished disposition), the petitioner had refused to work with the counsel appointed to him and also refused to represent himself in an apparent attempt to postpone his trial. We rejected his habeas petition, noting that it was not a typical self-representation case because Swiger did not actively choose self-representation, he explicitly told the court he did not want it, and, by choosing to remain passive at his trial, he in reality rejected self-representation. The *Swiger* court reasoned:

> The problem in this case was not Swiger's lack of understanding about the risks of self-representation, which he understood. The problem was that a defendant cannot be permitted to stop the criminal justice process in its tracks by rejecting appointed counsel and refusing self-representation, which is effectively what he did. Perhaps in other circumstances, it would have been wise for the trial court to grant Swiger's motion for a continuance once his decision became clear. But in view of Swiger's failure to appear for his first trial and in view of the eight days the court had given him to think through his options, the approach the court took was a defensible one.

*Id*. at 882 (emphasis omitted). That reasoning applies with equal force to this case. There is no doubt that King understood the risk of representing himself. The issue for the trial court was reining in a defendant who was attempting to manipulate the system by first refusing to retain an attorney, then by refusing to work with his attorney. Under those circumstances, the trial court was justified in letting King proceed *pro se*. *See also Sullivan v. Pitcher*, 82 Fed. App'x 162 (6th Cir. Nov. 18, 2003) (per curiam) (affirming the rejection of a habeas petition where petitioner entered guilty plea *pro se* after the judge issued an ultimatum of working with his sixth appointed counsel or proceeding *pro se*), *cert. denied*, 541 U.S. 991 (2004).

The Seventh Circuit has also found that when a defendant waives his right to counsel through his dilatory conduct, the Constitution does not require a court to engage in an extended discussion about the repercussion of the waiver. In *Oreye*, the defendant's second attorney filed a motion to withdraw six days before the trial was scheduled to begin because defendant refused to cooperate with him. The judge gave the defendant the choice of keeping his attorney, finding another attorney who would be ready to begin trial on schedule, or representing himself. 263 F.3d at 670. The defendant never said that he wanted to proceed *pro se*, but the Seventh Circuit held that he waived his right to an attorney by conduct—that is, by refusing the first two options he necessarily chose the third. *Id*. The defendant argued that the trial court should have postponed his trial to give him time to find a new attorney or explained the perils of self-representation. *Id*. at 671. The Seventh Circuit rejected his first argument based on settled precedent in that circuit that a "defendant has no right to indefinite delays while he tries on new lawyers unless he has a reason for dissatisfaction with the

old." *Id*. The court rejected the defendant's second argument because the judge had told the defendant that self-representation would be difficult. *Id*.

King contends that *Fowler v. Collins*, 253 F.3d 244 (6th Cir. 2001), a habeas decision, requires this court to find that the trial court's warnings were inadequate, but we disagree. In *Fowler*, the defendant was charged with passing bad checks and theft by deception. *Id*. at 247. Fowler appeared at his arraignment without counsel, and he told the court that he would represent himself. *Id*. No express waiver or colloquy occurred. Before his trial, the court read aloud the waiver of counsel form and Fowler agreed to it. *Id*. After a jury found him guilty, Fowler appealed arguing that the trial court did not adequately inquire as to whether he knowingly, intelligently, and voluntarily waived his right to counsel. *Id*. The state appellate court rejected his appeal, and he petitioned for habeas corpus, which the district court denied. We reversed, holding that the state court unreasonably applied Supreme Court precedent when it determined that Fowler knowingly, intelligently, and voluntarily waived his right to counsel. *Id*. at 249. Specifically, we decided that the one cursory question at arraignment and the reading of the waiver before trial were insufficient to communicate to Fowler the significance of waiving counsel. *Id*. at 250.

The *Fowler* court acknowledged that the extent of the court's probing into the various factors affecting a waiver of counsel varies from case to case. *Id*. at 249. The facts in *Fowler* are materially different than those in this case. In *Fowler,* there was no indication that the defendant had tried to use his Sixth Amendment right to manipulate the trial court into delaying his trial, he was not informed of his right to counsel, and the court did not explore why he chose to represent himself.

**AFFIRMED.**