NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0552n.06

Case Nos. 07-1466 and 07-2113

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| KARL WINGO, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |
| ———————————————— | ) |
| | ) |
| | ) |

**FILED**
**Aug 11, 2009**
LEONARD GREEN, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: BATCHELDER, DAUGHTREY and MOORE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Petitioner Karl Wingo ("Wingo") seeks reversal of the district court's denial of his motion for relief under 18 U.S.C. § 2255, and of his motion for bond pending the appeal of the denial of that motion. Neither claim has merit. We affirm.

**I.**

Finding that he had been denied counsel at a critical stage of the criminal proceedings — namely, during his debriefing sessions with the government as part of his entering into a plea agreement — the district court originally granted Wingo's § 2255 motion on November 27, 2006, and vacated his conviction for participating in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (2006). *Wingo v. United States*, No. 04-71558, 2006 WL 3446255 (E.D. Mich. Nov. 27, 2006). The government moved for reconsideration, arguing that the record did not support

Wingo's claim. The district court granted the motion, held another evidentiary hearing, and in an August 29, 2007, opinion, held that even if Wingo was denied counsel at a critical stage, and specifically at the point when Wingo signed the "*Kastigar*"[1] letter granting him immunity in exchange for his pleading guilty and cooperating with the government, the government had shown that he was not prejudiced by the denial. *Wingo v. United States*, No. 04-71558, 2007 WL 2480731, at *4 (E.D. Mich. Aug. 29, 2007). The court held that Wingo was therefore not entitled to relief, and reinstated the CCE conviction. The district court granted a certificate of appealability ("COA") on the sole question of whether Wingo's Sixth Amendment right to effective assistance of counsel was violated when his trial counsel was absent during debriefing sessions with government agents. This appeal followed.

Ineffective-assistance-of-counsel claims present mixed questions of law and fact, which we review de novo. *Mallet v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). In this appeal, Wingo claims that his counsel failed to explain the limited extent of the immunity granted to Wingo by the *Kastigar* letter, did not attend the debriefings, and "provided erroneous advice about the sentence Wingo would be exposed to if convicted at trial, resulting in Wingo's rejection of a plea offer made during the debriefings," and in the government's using against him at trial the information that Wingo had provided during the debriefings.

We turn first to Wingo's claim that his counsel failed to explain the scope of the possible penalties for the offenses with which Wingo was charged. Wingo has attempted to couch this claim as prejudice he suffered because his counsel was not present during the debriefings. Our review of his § 2255 motion and of the record, however, satisfies us that he never presented this claim to the

---

[1]*See Kastigar v. United States*, 406 U.S. 441 (1972).

district court. We therefore agree with the government that it is not included within the COA. Furthermore, even if we could interpret the COA to include this claim, it is abundantly clear from the record that the claim is baseless. Prior to the debriefings, Wingo signed at least two acknowledgments that he understood the minimum and maximum penalties for the offenses with which he was charged. The plea agreement that he rejected — but which he now claims he would have accepted had he been correctly advised of the possible penalties — included that information. Wingo is not entitled to relief on this claim.

It is undisputed that Wingo's counsel was not physically present at the *Kastigar* debriefings Wingo attended. Wingo claims that these sessions were a critical stage of the proceedings, and the absence of his counsel at these sessions denied him his Sixth Amendment right to effective assistance of counsel. This, he argues, was a *per se* violation of his Sixth Amendment rights. *See United States v. Cronic*, 466 U.S. 648, 659 (1983). The district court was initially persuaded by this argument, and in its November 2006 opinion, vacated the CCE conviction. However in reinstating that conviction in August 2007, the court essentially presumed *Strickland v. Washington*'s first prong, the deficient performance of counsel. *Wingo*, 2007 WL 2480731 at *3; *see generally Strickland v. Washington*, 466 U.S. 668 (1984). Moving directly to the prejudice prong, the court found none, concluding that the government had demonstrated that it had obtained the identity of Michael Zajac from independent sources, *Wingo*, 2007 WL 2480731 at *4, and that Zajac was the only witness whose testimony had played a significant role in the case against Wingo, *id.* at *3, n. 5. The court further concluded that the record did not support Wingo's claim that the government had used Wingo's statements to persuade Zajac to testify against Wingo. *Id.* at *4. Because the

3

court had found in its 2006 opinion that these were Wingo's only claims of prejudice that had any substance, the court found that Wingo had failed to demonstrate prejudice.

We will assume for purposes of this appeal that Wingo's first debriefing — the session at which Wingo signed the *Kastigar* letter — was a critical stage of the proceedings, such that the total absence of counsel would require us to presume prejudice. *See Cronic*, 466 U.S. at 659. The evidence, however, refutes any claim of total absence of counsel at that debriefing. The record contains some evidence that Stephen Glass, Wingo's attorney at the time of the intial debriefing, had reviewed the *Kastigar* letter with Wingo prior to the debriefing. *Wingo*, 2006 WL 3446255 at *3 (recounting that Glass testified as to this being his usual practice and that AUSA Waterstreet confirmed that this had been done). More importantly, the record demonstrates that during that initial debriefing on February 13, 1992, Wingo spoke with Glass by telephone, and Glass advised him to sign the cooperation agreement. *Id.* at *4; *see Wright v. Van Patten*, 128 S.Ct. 743, 746-747 (2008) (putting off a direct disposition of the issue of "the merits of telephone practice," but holding that the lower courts' findings that counsel's presence by telephone was not deficient performance was not an unreasonable application of federal law).

The facts of this case do not support Wingo's *Cronic* claim. And once Wingo — with the advice of counsel — had signed the *Kastigar* letter and agreed to cooperate with the government, the debriefings ceased to be adversarial proceedings where Wingo's rights were in danger of being "irretrievably lost" if not safeguarded by the presence of counsel. *See Van v. Jones* 475 F.3d 292, 298 (6th Cir. 2007). Wingo must therefore demonstrate that his counsel's performance was not only deficient, but resulted in actual prejudice. We have carefully reviewed the record, and conclude that for the reasons explained by the district court, Wingo cannot carry that burden.

4

## II.

Wingo also challenges, *pro se*, the district court's denying him bond while his 28 U.S.C. § 2255 motion was pending. This is a claim without merit. The test for granting bond during the pendency of a § 2255 was set forth in *Aronson v. May,* 85 S.Ct. 3 (1964), which we interpreted in *Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990). It requires that (1) the § 2255 motion present substantial questions (principal among them a showing that challenging the sentence in the district court was inadequate or ineffective), and (2) there exists "some circumstance making this application exceptional and deserving of special treatment in the interests of justice." *Aronson*, 85 S.Ct. at 5; *Dotson*, 900 F.2d at 79 (quoting *Aronson*).

As we said in *Dotson*, "[t]here will be few occasions where a prisoner will meet this standard. Moreover, it is doubtful that the district court or a circuit judge will issue the certificate of probable cause for an appeal required for appeals by state habeas petitioners in Federal Rule of Appellate Procedure 22(b) unless the claim reflects clear merit." *Id.* Here, there was no certificate of appealability issued on this ground. But even if there had been, our analysis of the claims raised in Wingo's § 2255 motion forecloses our finding that either the remedy in the sentencing court was inadequate or that this case presents exceptional circumstances.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, dissenting.**  After his indictment on various drug-related charges and without having entered into a plea agreement with the government, Karl Wingo participated in several sessions during which he waived his Fifth Amendment privilege against self-incrimination and debriefed the government on the details of the crimes with which he had been charged.  It is unclear how much Wingo had spoken with his counsel, Stephen Glass, up to this point, but it appears that they met on only one occasion and spoke almost exclusively by telephone, as Glass's practice was based in Florida.[1]  Although I express no opinion on whether Glass was "totally absent" from Wingo's initial debriefing session, during which Wingo spoke with Glass by telephone, it is undisputed that Glass was totally absent from the four subsequent debriefing sessions.  Because I believe that these debriefing sessions were a "critical stage" of the proceedings, I would presume that Wingo was prejudiced by his counsel's absence and therefore was deprived of his Sixth Amendment right to the assistance of counsel pursuant to *United States v. Cronic*, 466 U.S. 648 (1984).

Claims of ineffective assistance of counsel generally are reviewed under the well-established test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires the petitioner to show that the counsel's performance was both deficient and prejudicial to the defense.  "It is well settled," however, "that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error."  *Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007).  In *Cronic*, decided the same day as *Strickland*, "the Supreme Court held that an

---

[1]Glass, who was not a member of the Michigan state bar when he represented Wingo, was disbarred by the Florida Supreme Court two years later.

appeals court must reverse a criminal defendant's conviction 'without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.'" *Mitchell v. Mason*, 325 F.3d 732, 740 (6th Cir. 2003) (quoting *Cronic*, 466 U.S. at 659 n.25). Therefore, while the *Strickland* test "provides guidance for resolving virtually all ineffective assistance of counsel claims, there are 'a few situations in which prejudice may be presumed,'" including the absence of counsel during a critical stage of the proceedings. *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)).

The Supreme Court has not laid out "a comprehensive and final one-line definition of 'critical stage.'" *Van*, 475 F.3d at 312. Most recently, the Court stated that a critical stage is "a step of a criminal proceeding . . . that h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696 (2002). A critical stage is one at which "[a]vailable defenses may be [] irretrievably lost," *Hamilton v. Alabama*, 368 U.S. 52, 53 (1961), and "where rights are preserved or lost," *White v. Maryland*, 373 U.S. 59, 60 (1963). The Court has emphasized that the determination requires "an analysis 'whether potential substantial prejudice to defendant's rights inhered in the . . . confrontation and the ability of counsel to help avoid that prejudice.'" *Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (alteration in original) (quoting *United States v. Wade*, 388 U.S. 218, 227 (1967)). We also should consider whether the stage is adversarial in nature so that "the accused required aid in coping with legal problems or assistance in meeting his adversary." *United States v. Ash*, 413 U.S. 300, 313 (1973).

A variety of post-indictment, pretrial proceedings have been found to be "critical stages." *See, e.g.*, *Michigan v. Jackson*, 475 U.S. 625, 629-30 (1986) (noting that, after arraignment, "government efforts to elicit information from the accused, including interrogation, represent

7

'critical stages' at which the Sixth Amendment applies"), *overruled on other grounds*, *Montejo v. Louisiana*, --- U.S. ---, 129 S. Ct. 2079, 2085 (2009); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006) ("Plea negotiations, guilty plea hearings, and sentencing hearings are all 'critical stages' at which the right to counsel attaches."). Because government debriefings may hold significant consequences for the accused with respect to waiver of his or her Fifth Amendment right against self-incrimination, negotiation of a plea agreement, and sentencing, I believe that post-indictment debriefings are a critical stage for purposes of the Sixth Amendment.

In *Estelle v. Smith*, the Supreme Court emphasized the importance of counsel when a defendant considers waiving his or her Fifth Amendment right against self-incrimination: "Because '[a] layman may not be aware of the precise scope, the nuances, and the boundaries of his Fifth Amendment privilege,' the assertion of that right 'often depends upon legal advi[c]e from someone who is trained and skilled in the subject matter.'" 451 U.S. 471, 471 (1981) (first alteration in original) (quoting *Maness v. Meyers*, 419 U.S. 449, 466 (1975)). The Court concluded that consent to a psychiatric interview was a critical stage in pretrial proceedings such that the defendant's Sixth Amendment right to counsel was violated when the defendant was not given an opportunity to consult with his counsel before participating in a psychiatric examination. Although the repercussions of a psychiatric examination may be different from those of debriefing sessions, both involve the defendant's decision to waive certain Fifth Amendment rights, and in both circumstances "a defendant should not be forced to resolve such an important issue without 'the guiding hand of counsel.'" *Id*. (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)).

Aside from the waiver of the Fifth Amendment right against self-incrimination, debriefings hold the potential for prejudice to the accused which may be avoided with the assistance of counsel.

8

In *United States v. Ming He*, 94 F.3d 782 (2d Cir. 1996), the Second Circuit discussed at length the important role of counsel at debriefings in considering whether a defendant was entitled to have counsel present during debriefing sessions held after the defendant had, with the assistance of counsel, pleaded guilty and signed a cooperation letter. Although the court did not reach the underlying Sixth Amendment issue, the court used its supervisory powers to conclude "that cooperating witnesses are entitled to have counsel present at debriefings, unless they explicitly waive such assistance." *Id*. at 793. Rejecting the government's argument that "a debriefing session is a minor event and that defense counsel would of necessity be limited to giving advice principally about matters of fact," the court discussed several ways in which counsel's assistance may be crucial at a debriefing session. *Id*. at 789. "First, a lawyer can explain the government's questions while also keeping her client calm," preventing the defendant from "blurt[ing] out unthinking answers." *Id*. "Second, a lawyer can keep the client focused on the fact that while he is seeking the assistance and protection of the government, that entity does not share the defendant's interests even after the execution of a cooperation agreement." *Id*. at 790. Contrary to the government's argument in this case, the court noted that a debriefing is an adversarial proceeding, because "the defendant's rights have not been fully adjudicated." *Id*. "Third, in this setting, a defense attorney might help resolve potential disagreements between the government and the defendant in clarifying his answers to ensure they are complete and accurate." *Id*. Fourth, "defense counsel can serve as a potential witness at sentencing to the fact that her client fully performed the promise he made to the government." *Id*. Finally, the court noted that the outcome of the debriefing sessions would impact whether the government made a motion for a downward departure under § 5K1.1 of the United

9

States Sentencing Guidelines, "a motion that has a critical effect on the amount of time defendant

will serve in prison":

> Most significantly, the refusal by the government to make such a motion is ordinarily unreviewable. The special nature of a § 5K1.1 motion demonstrates that the government debriefing interview is crucial to a cooperating witness. To send a defendant into this perilous setting without his attorney is, we think, inconsistent with the fair administration of justice.

*Id*.

All of these reasons make clear that Wingo's debriefing sessions were adversarial in nature

and also were stages at which aspects of Wingo's Fifth Amendment right against self-incrimination

were "irretrievably lost." *Hamilton*, 368 U.S. at 53. Moreover, the consequences that the debriefings

held for Wingo were in many respects more substantial than those faced by the defendant in *Ming*

*He* because, unlike Ming He, Wingo had not yet entered into a plea agreement when he debriefed.

Therefore, not only was his sentence dependent upon the debriefings, but the debriefings were crucial

to the plea negotiations. *Cf. King*, 433 F.3d at 490 (noting that plea negotiations are a critical stage

of criminal proceedings). Based on these debriefings, the government would determine the terms

of the plea agreement and whether the government would be willing to enter into a plea agreement

at all. The importance of the debriefings is exemplified by the fact that, after the debriefings broke

down, Wingo did not reach a plea deal with the government and the case proceeded to trial. The

mere fact that Wingo had signed the *Kastigar* letter does not mean that the government was no

longer his adversary, and the debriefings surely held significant consequences for Wingo.

I recognize that, in practice, some defense counsel may not attend debriefing sessions

subsequent to the first session and that there may be benefits to the cooperation process if a

defendant is able to meet with the government without his counsel present. As at any other stage of

criminal proceedings, however, a defendant may affirmatively waive his or her right to have counsel present during the debriefing sessions, as long as this waiver is made voluntarily, knowingly, and intelligently. *See Estelle*, 451 U.S. at 471 n.16. In some cases, counsel may determine that the debriefings would proceed more smoothly without counsel present, and in such cases counsel may advise the defendant to waive his right to have counsel present at the debriefings. Here, there is no indication that Wingo made any knowing and intelligent waiver of counsel. I therefore would conclude that Wingo's Sixth Amendment rights were violated by his counsel's failure to attend the vast majority of his debriefing sessions.

Regarding Wingo's separate appeal of the district court's denial of bond pending appeal, I would conclude that we have no jurisdiction over this appeal because no certificate of appealability was issued in that appeal. Although denial of bond pending habeas review is appealable under the collateral-order doctrine, *Dotson v. Clark*, 900 F.2d 77, 78 (6th Cir. 1990), we have held "that a certificate of probable cause[2] is a prerequisite to appealing the denial of a bail motion in a habeas proceeding," *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). The district court specifically denied a certificate of appealability on the issue of the denial of bond, and, in response to Wingo's notice of appeal of the denial of bond, this court refused to expand the certificate of appealability beyond the one issue certified by the district court. Therefore, under *Lee*, I would conclude that we do not have jurisdiction over Wingo's appeal of the district court's denial of bond.

---

[2]The pre-AEDPA version of Rule 22 of the Federal Rules of Appellate Procedure referred to the requirement for a "certificate of probable cause," but the current rule uses the term "certificate of appealability." Fed. R. App. P. 22(b)(1).