NOT RECOMMENDED FOR PUBLICATION

File Name: 26a0034n.06

Case No. 25-3129

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

<table>
<tr><td>JAMAL DYE,</td><td>)</td><td rowspan="2"><strong>FILED</strong><br>Jan 21, 2026<br>KELLY L. STEPHENS, Clerk</td></tr>
<tr><td>    Petitioner-Appellant,</td><td>)<br>)<br>)</td></tr>
<tr><td>v.</td><td>)<br>)</td><td>ON APPEAL FROM THE UNITED<br>STATES DISTRICT COURT FOR</td></tr>
<tr><td>GEORGE FREDERICK, Warden,</td><td>)<br>)</td><td>THE NORTHERN DISTRICT OF<br>OHIO</td></tr>
<tr><td>    Respondent-Appellee.</td><td>)<br>)</td><td></td></tr>
<tr><td></td><td>)</td><td>OPINION</td></tr>
</table>

Before: BATCHELDER, CLAY, and RITZ, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** An Ohio prisoner appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We AFFIRM.

## I.

The petitioner, Jamal Dye, was at a party at the home of a man named James Gray, when an altercation led to Dye's shooting and killing Gray. The State charged Dye with aggravated murder, murder, felonious assault, discharge of a firearm in a prohibited premises, and carrying a concealed weapon. Dye pleaded not guilty, and the case was tried to a state-court jury.

The State produced six witnesses who were at the party, including the only eyewitness to the shooting, Elizabeth Torres. Torres testified that she saw Dye shoot Gray, but did not personally observe any struggle between the two men prior to the shooting. Others testified about altercations between Dye and Gray throughout the evening, including that Gray and several others beat and fought with Dye. Certain photos, in which Dye was holding guns, were obtained from social media

and introduced at trial. And a police officer testified that, some months prior to the incident, a tip that Dye possessed guns guided the police to obtain a search warrant and seize guns from Dye's bedroom at his home.

Defense counsel produced one witness who was present at the party (but did not see the shooting), and Dye also testified to give his own account of the events. Dye admitted that he shot and killed Gray but initially claimed that it had been an accident during a struggle for the gun. Upon further questioning, however, Dye changed that story and claimed that the shooting had been in self-defense. Dye also testified that he did not own any guns, had never owned any guns, and certainly never had any guns in his bedroom. This testimony led the State to produce the guns recovered from Dye's bedroom, the police officer's testimony about recovering those guns from Dye's bedroom, and social media photos showing Dye in possession of guns. The State relied on this evidence in closing argument to claim that Dye was dishonest by nature because he lied about possessing guns and he lied about committing Gray's murder.

The jury convicted Dye on three of the five counts: murder, felonious assault, and carrying a concealed weapon. The court sentenced him to prison for 18 years to life. Dye appealed and the Ohio Appellate Court affirmed. The Ohio Supreme Court denied further review.

Dye petitioned for state post-conviction relief, claiming ineffective assistance of counsel (IAC) because his counsel had not called certain witnesses to testify at trial, namely: (1) Lisa Kinney, Jonathan Bella, and Lewis Richardson, whose testimony Dye claimed would have supported his self-defense theory, though none had actually witnessed the shooting and Richardson had not provided an affidavit (Dye relied on his investigator's claims of what Richardson had told him); and (2) Dye's mother and step-father, who would have testified that the guns the police seized from Dye's bedroom were not his, but rather that a man named Shawn Williams came to

2

their home when Dye was not there (but the parents were), hid the guns in Dye's bedroom unbeknownst to Dye, and then tipped the police that the guns were hidden there. The state trial court delayed acting on Dye's petition for a substantial period.

Several months later, after the time to file for post-conviction relief had expired, Dye filed an amended petition adding another claim: (3) IAC for a conflict of interest. Dye claimed that his defense counsel had previously represented Bella in a separate matter, knew that Bella had violated his probation by being at the party, and to keep Bella out of trouble, he did not call Bella to testify for Dye. Despite recognizing that this third claim was untimely, the state trial court addressed it anyway and ultimately rejected all three claims on the merits.

Dye appealed and the Ohio Appellate Court affirmed, *Ohio v. Dye*, 2021 WL 303316, 2021-Ohio-207 (Ohio Ct. App. Jan. 28, 2021), which is the last reasoned state-court opinion in this case because the Ohio Supreme Court denied further review. Specifically, the Ohio Appellate Court said, "[t]he [trial] court did not find Dye's claims to be credible and determined that they did not warrant a hearing and did not warrant postconviction relief. We do not find that the court abused its discretion in making that decision." *Id*. at *1, ¶ 7. Dye filed a federal habeas petition, raising the same three claims, and the district court denied the petition but granted Dye a certificate of appealability (COA) for all three claims. Dye now appeals.

**II.**

In a § 2254 habeas petition where the district court made no credibility determinations or findings of fact, we review the district court's judgment and factual findings de novo. *See King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the district court's review of a state court decision. *Id*. Under AEDPA, a federal court can overturn a state-court conviction if it "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

To prevail under the "contrary to" clause, a petitioner must show that the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite" to that reached by the Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). This appeal does not involve any claim of a contrary-to scenario.

To prevail under the "unreasonable application" clause, a petitioner must show that "the state court identifie[d] the correct governing legal principle from th[e] Court's decisions but unreasonably applie[d] that principle to the facts of the [petitioner's] case." *Id*. at 413. "[A]n unreasonable application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citation omitted). It is irrelevant that "the federal habeas court might conclude in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly." *Gagne v. Booker*, 680 F.3d 493, 513 (6th Cir. 2012) (en banc) (internal quotation marks, editorial marks, and citation omitted).

> [When] the state court lays out its reasoning, as the [Ohio Appellate] Court did here, we apply our holistic, deferential standard to the stated reasoning, as well as alternative reasoning that could have supported the [state] court's decision. And in evaluating a state court's decision, we may not focus on particular snippets from the court's opinion. Rather, we start by presuming the state court's conclusion was reasonable. Then, we look at the record before the state court and the Supreme Court's then-controlling precedent and ask whether any reasonable argument supports the state court's decision. If so, we must deny habeas.

*White v. Plappert*, 131 F.4th 465, 477–78 (6th Cir. 2025), *petition for cert. filed* (U.S. Oct. 8, 2025) (No. 25-436) (quotation marks and citations omitted).

4

Dye claims ineffective assistance of counsel. The Sixth Amendment protects a criminal defendant's right to the assistance of counsel for his defense, and we will find a violation of this right when (1) counsel's representation "fell below an objective standard of reasonableness" and (2) there is a "reasonable probability" that but for counsel's poor performance the case would have come out differently. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

When advancing an IAC claim under AEDPA, the petitioner "must overcome two layers of deference: deference to the defense attorney and deference to the state court. That's a nearly insurmountable hurdle." *White*, 131 F.4th at 478 (quotation marks and citations omitted). That is, the petitioner must overcome *Strickland*'s "strong presumption that counsel behaved reasonably," and must "also prove that *every* fairminded jurist would agree that every reasonable lawyer would have made a different decision." *Id*. (quotation marks and citations omitted). After that, the petitioner must also establish prejudice by proving that "but for" counsel's errors, there was "a substantial, not just conceivable, likelihood of a different result." *Id.* at 478-79 (quotation marks and citations omitted). And even then, "[b]ecause the *Strickland* standard is a general standard," under AEDPA, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* at 479 (quotation marks and citations omitted). Finally, even "if a petitioner [] overcomes AEDPA and *Strickland*'s doubly deferential gauntlet and thereby convinces the court that law requires relief, he then must convince the court that justice also warrants relief." *Id.* (quotation marks and citations omitted).

Dye's first two IAC claims challenge counsel's choice of witnesses to testify at trial and therefore it warrants mention that defense counsel's decisions of "whether to call a witness" and "how to conduct a witness'[s] testimony are classic questions of trial strategy." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012); *see also Strickland*, 466 U.S. at 672-73, 699 (holding

decision not to call character witnesses at sentencing was a reasonable strategic decision); *Clark v. Mitchell*, 425 F.3d 270, 286 n.6 (6th Cir. 2005) (holding that a decision not to call witnesses to testify at sentencing to prevent cross-examination was strategic). And "[s]trategic decisions made after a thorough investigation of the relevant law and facts are . . . 'virtually unchallengeable.'" *Rayborn*, 489 F. App'x at 878 (quoting *Strickland*, 466 U.S. at 690).

Having said that, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. To be sure, it is "objectively unreasonable to pursue a trial 'strategy' that does not require interviewing a witness, despite the fact that the witness is 'known and potentially important.'" *United States v. Arny*, 831 F.3d 725, 732 (6th Cir. 2016) (quoting *Towns v. Smith*, 395 F.3d 251, 259 (6th Cir. 2005)). On the other hand, when defense counsel's investigation was reasonable and the challenged decisions are supported by that investigation, then counsel's decisions are entitled to deference. *Wright v. Bell*, 619 F.3d 586, 596 (6th Cir. 2010) ("Because the record amply supports the determination that Wright's trial counsel made strategic decisions about which witnesses to call at the penalty phase of the trial and that those decisions were supported by a reasonable investigation, Wright was not entitled to habeas relief.").

Dye's third IAC claim is that his counsel was ineffective due to a successive-representation conflict of interest. "Successive representation" describes "previous unrelated representation of a co-defendant and/or trial witness." *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004). For any

IAC claim based on a conflict of interest, the petitioner must show "an actual conflict of interest." *Wood v. Georgia*, 450 U.S. 261, 273 (1981). In concurrent-representation scenarios, prejudice may be presumed if the petitioner can show that counsel "actively represented conflicting interests" and that the conflict adversely affected counsel's performance. *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)) (quotation marks omitted). But in successive-representation claims, the traditional *Strickland* framework, and not the *Cuyler* presumption, applies. *Leonard v. Warden*, 846 F.3d 832, 844 (6th Cir. 2017).

**A.**

Dye claims that his trial counsel's decision not to call three possible defense witnesses—Lisa Kinney, Jonathan Bella, and Lewis Richardson—to testify at trial was IAC because all three would have testified that they were at Gray's party, that they witnessed Dye being assaulted by a group of men including Gray, that they saw Dye struggle for Gray's gun, and that only after that beating did they hear the gunshot that presumably killed Gray. Dye claims that the Ohio Appellate Court's determination was unreasonable because it affirmed the trial court's ruling that these witnesses were not credible, even though the trial court did not hold a hearing to determine for itself their credibility.

Regarding Kinney, the Ohio Appellate Court determined that defense counsel was aware of her and declined to call her to testify. The court found that it was possible that counsel made that decision because the jury was unlikely to believe her testimony that three men viciously stomped, beat, and robbed Dye before the shooting, when the photo evidence showed Dye with only a scraped calf and swollen pinky finger. *Dye*, 2021 WL 303316, at *9, ¶ 40. The court gave deference to counsel's strategic decision and found that he was not deficient in his decision regarding Kinney.

Regarding Bella, the Ohio Appellate Court credited counsel's explanation that he did not know about Bella's alleged testimony, and it determined that counsel's investigation was sufficient. The court explained that more than 40 people were at the party, but Bella was not listed as one of them on any police report, and, according to counsel, Bella never shared that he was at the party or that he could support Dye's self-defense claim. *Id.* at *9, ¶ 44. So, the court found no error regarding Bella.

Regarding Richardson, the Ohio Appellate Court determined that counsel's investigation was sufficient, and that counsel was justified in failing to identify and call Richardson, given that "Richardson [did] not appear in any witness accounts or reports of any kind as having attended the party." *Id*. at *10, ¶ 46. Nor, apparently, did Dye inform trial counsel that Richardson had attended the party, if he was aware that Richardson had atteneded. *Id*. And the court doubted that the jury would have believed Richardson, as it apparently disbelieved similar testimony that Dye was beaten and robbed from the defense witness who did testify. *Id*. at ¶ 48. So, the court found no error.

Dye faults his counsel for failing to call these three witnesses, but he has not shown, and cannot show, "that *every* fairminded jurist would agree that every reasonable lawyer" would have found and called these witnesses. *See White*, 131 F.4th at 478 (citation omitted). And Dye's disagreement with the Ohio Appellate Court's determinations that counsel's investigation was sufficient, and his strategic choices were reasonable, fails for essentially the same reason. Dye cannot show that the Ohio Appellate Court's explanations or reasons were "so obviously wrong that no fair-minded jurist could possibly agree." *Id*. at 477. Therefore, Dye cannot overcome the double deference in this *Strickland*-AEDPA claim.

**B.**

Dye also claims that his counsel's decision not to call Dye's parents to testify was IAC. Dye argues that his parents would have testified about Shawn Williams' hiding the guns in Dye's bedroom unbeknownst to Dye, thereby corroborating Dye's testimony that he never had any guns in his bedroom and verifying his credibility before the jury. Dye admits that his testimony at trial "did have the earmarks of fabrication," Petitioner's Br. at 47, but claims that the Ohio Appellate Court's determination that his testimony was dishonest was unreasonable because the court misread his trial testimony. Dye contends that the court incorrectly phrased his testimony as asserting that "no guns had been found in his house," whereas, according to Dye, his actual testimony was that *he* never personally had any guns in his house, while also admitting that his mother had told him that the police found guns in his bedroom when he was not there.

The Ohio Appellate Court determined that defense counsel was aware of the gun ownership issue but that Dye himself caused the problem at trial by testifying that guns were never found in his home, but then admitting that they were and that he knew they were because his mother had told him as much, and then adding that it was "possible" that a man named Shawn Williams put them there. *Dye*, 2021 WL 303316, at *11, ¶ 51. The court explained that "Dye was not truthful when he said guns were never found in his home" because even if the guns were not his own, he eventually acknowledged that he knew guns were found in his home. *Id*. at *11, ¶ 52. Also, the social media photos of Dye brandishing guns made his denials suspicious, if not wholly unbelievable. And in any event, possession of the guns was immaterial to the charges and convictions. Finally, it was doubtful that the jury would have believed the parents' testimony about Shawn Williams or that their testimony would have had any effect, given all of the other evidence.

Dye argues that his parents' testimony was necessary to bolster his testimony, and thereby preserve his credibility, but he has not shown and cannot show that *every* fairminded jurist would agree that every reasonable lawyer would have called the parents to testify, or that the Ohio Appellate Court's explanations or reasons were so obviously wrong that no fair-minded jurist could possibly agree. Dye cannot overcome the double deference due in this claim.

**C.**

Finally, Dye claims that his trial counsel's prior representation of potential defense witness Bella was IAC due to a conflict of interest. His theory is that Bella could have given testimony to support his self-defense claim but counsel did not call Bella to testify because counsel knew that Bella had violated parole by attending that party, and counsel had an ongoing duty to former-client Bella to conceal that parole violation. Dye appears to claim that the Ohio Appellate Court's determination was unreasonable because the court relied on the fact that counsel was not representing Bella at the time of Dye's trial to find that the "possible" conflict was insufficient, whereas Dye insists that the prior representation and the on-going duty to a former client was enough.

It is undisputed that Dye's counsel was not representing Bella at the time of Dye's trial. And the Ohio Appellate Court certainly acknowledged that. But the court also credited counsel's assertion that he did not know that Bella was at the party or could provide beneficial testimony and concluded that, even if counsel did know about Bella's possible testimony, Dye had no evidence that his counsel had an actual conflict of interest regarding Bella. *Dye*, 2021 WL 303316, at *12, ¶ 61; *see Moss v. United States*, 323 F.3d 445, 463 (6th Cir. 2003) (explaining, in the *Cuyler* context, that a conflict of interest cannot be "merely hypothetical"). Dye offered only speculation about what counsel could have thought when making his strategic decision. Moreover, Dye had

no evidence that his counsel's prior representation of Bella adversely affected his performance, as Bella's testimony "would not have added anything the jury had not already rejected." *Id*. at *13, ¶ 65. Showing an "adverse effect requires demonstrating that 'counsel was influenced in his basic strategic decisions by the interests of the former client,'" an evidentiary requirement that Dye does not satisfy. *See United States v. Adams*, No. 21-1497, 2023 WL 2378499, at *4 (6th Cir. Mar. 7, 2023) (quoting *Moss*, 232 F.3d at 466). And because Dye's conflict claim concerned a prior representation, not a concurrent representation, prejudice was not presumed; Dye had to prove it. *See Leonard*, 846 F.3d at 847.

In short, Dye has not shown an actual conflict of interest, that his counsel necessarily knew that Bella was a potential witness, or that counsel was affected by the prior representation. Nor has Dye shown that the Ohio Appellate Court's explanation was obviously wrong. As with the prior claims, Dye cannot overcome the double deference due in this claim.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.